Justice Scalia, with whom Justice Thomas joins,
dissenting.
The Constitution guarantees a defendant who knowingly and voluntarily waives the right to counsel the right to proceed pro se at his trial. Faretta v. California, 422 U. S. 806 (1975). A mentally ill defendant who knowingly and voluntarily elects to proceed pro se instead of through counsel *180 receives a fair trial that comports with the Fourteenth Amendment. Godinez v. Moran, 509 U. S. 389 (1993). The Court today concludes that a State may nonetheless strip a mentally ill defendant of the right to represent himself when that would be fairer. In my view the Constitution does not permit a State to substitute its own perception of fairness for the defendant’s right to make his own case before the jury — a specific right long understood as essential to a fair trial.
I
Ahmad Edwards suffers from schizophrenia, an illness that has manifested itself in different ways over time, depending on how and whether Edwards was treated as well as on other factors that appear harder to identify. In the years between 2000 and 2003 — years in which Edwards was apparently not treated with the antipsychotic medications and other drugs that are commonly prescribed for his illness — Edwards was repeatedly declared incompetent to stand trial. Even during this period, however, his mental state seems to have fluctuated. For instance, one psychiatrist in March 2001 described Edwards in a competency report as “free of psychosis, depression, mania, and confusion,” “alert, oriented, [and] appropriate,” apparently “able to think clearly” and apparently “psychiatrically normal.” App. 61a.
Edwards seems to have been treated with antipsychotic medication for the first time in 2004. He was found competent to stand trial the same year. The psychiatrist making the recommendation described Edwards’ thought processes as “coherent” and wrote that he “communicate[d] very well,” that his speech was “easy to understand,” that he displayed “good communications skills, cooperative attitude, average intelligence, and good cognitive functioning,” that he could “appraise the roles of the participants in the courtroom proceedings,” and that he had the capacity to challenge prosecution witnesses realistically and to testify relevantly. Id., at 232a-235a (report of Dr. Robert Sena).
*181 Over the course of what became two separate criminal trials, Edwards sought to act as his own. lawyer. He filed a number of incoherent written pleadings with the judge on which the Court places emphasis, but he also filed several intelligible pleadings, such as a motion to dismiss counsel, a motion to dismiss charges under the Indiana speedy trial provision, and a motion seeking a trial transcript.
Edwards made arguments in the courtroom that were more coherent than his written pleadings. In seeking to represent himself at his first trial, Edwards complained in detail that the attorney representing him had not spent adequate time preparing and was not sharing legal materials for use in his defense. The trial judge concluded that Edwards had knowingly and voluntarily waived his right to counsel and proceeded to quiz Edwards about matters of state law. Edwards correctly answered questions about the meaning of voir dire and how it operated, and described the basic framework for admitting videotape evidence to trial, though he was unable to answer other questions, including questions about the topics covered by state evidentiary rules that the judge identified only by number. He persisted in his request to represent himself, but the judge denied the request because Edwards acknowledged he would need a continuance. Represented by counsel, he was convicted of criminal recklessness and theft, but the jury deadlocked on charges of attempted murder and battery.
At his second trial, Edwards again asked the judge to be allowed to proceed pro se. He explained that he and his attorney disagreed about which defense to present to the attempted murder charge. Edwards’ counsel favored lack of intent to kill; Edwards, self-defense. As the defendant put it: “My objection is me and my attorney actually had discussed a defense, I think prosecution had mentioned that, and we are in disagreement with it. He has a defense and I have a defense that I would like to represent or present to the Judge.” Id., at 523a.
*182 The court again rejected Edwards’ request to proceed pro se, and this time it did not have the justification that Edwards had sought a continuance. The court did not dispute that Edwards knowingly and intelligently waived his right to counsel, but stated it was “going to carve out a third exception” to the right of self-representation, and — without explaining precisely what abilities Edwards lacked — stated Edwards was “competent to stand trial but I’m not going to find he’s competent to defend himself.” Id., at 527a. Edwards sought — by a request through counsel and by raising an objection in open court — to address the judge on the matter, but the judge refused, stating that the issue had already been decided. Edwards’ court-appointed attorney pursued the defense the attorney judged best — lack of intent, not self-defense — and Edwards was convicted of both attempted murder and battery. The Supreme Court of Indiana held that he was entitled to a new trial because he had been denied the right to represent himself. The State of Indiana sought certiorari, which we granted. 552 U. S. 1074 (2007).
II
A
The Constitution guarantees to every criminal defendant the “right to proceed without counsel when he voluntarily and intelligently elects to do so.” Faretta, 422 U. S., at 807. The right reflects “a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so.” Id., at 817. Faretta’s discussion of the history of the right, id., at 821-833, includes the observation that “[i]n the long history of British criminal jurisprudence, there was only one tribunal that ever adopted a practice of forcing counsel upon an unwilling defendant in a criminal proceeding. The tribunal was the Star Chamber,” id., at 821. Faretta described the right to proceed pro se as a premise of the Sixth Amendment, *183 which confers the tools for a defense on the “accused,” and describes the role of the attorney as one of “assistance.” The right of self-representation could also be seen as a part of the traditional meaning of the Due Process Clause. See Martinez v. Court of Appeal of Cal., Fourth Appellate Dist., 528 U. S. 152, 165 (2000) (Scalia, J., concurring in judgment). Whichever provision provides its source, it means that a State simply may not force a lawyer upon a criminal defendant who wishes to conduct his own defense. Faretta, 422 U. S., at 807.
Exercising the right of self-representation requires waiving the right to counsel. A defendant may represent himself only when he “ ‘knowingly and intelligently’ ” waives the lawyer’s assistance that is guaranteed by the Sixth Amendment. Id., at 835. He must “be made aware of the dangers and disadvantages of self-representation,” and the record must “establish that ‘he knows what he is doing and his choice is made with eyes open.’” Ibid, (quoting Adams v. United States ex rel. McCann, 317 U. S. 269, 279 (1942)). This limitation may be relevant to many mentally ill defendants, but there is no dispute that Edwards was not one of them. Edwards was warned extensively of the risks of proceeding pro se. The trial judge found that Edwards had “knowingly and voluntarily” waived his right to counsel at his first trial, App. 512a, and at his second trial the judge denied him the right to represent himself only by “carv[ing] out” a new “exception” to the right beyond the standard of knowing and voluntary waiver, id., at 527a.
When a defendant appreciates the risks of forgoing counsel and chooses to do so voluntarily, the Constitution protects his ability to present his own defense even when that harms his case. In fact waiving counsel “usually” does so. Mc-Kaskle v. Wiggins, 465 U. S. 168, 177, n. 8 (1984); see also Faretta, 422 U. S., at 834. We have nonetheless said that the defendant’s “choice must be honored out of ‘that respect for the individual which is the lifeblood of the law.’ ” Ibid. *184 What the Constitution requires is not that a State’s case be subject to the most rigorous adversarial testing possible— after all, it permits a defendant to eliminate all adversarial testing by pleading guilty. What the Constitution requires is that a defendant be given the right to challenge the State’s case against him using the arguments he sees fit.
In Godinez, 509 U. S. 389, we held that the Due Process Clause posed no barrier to permitting a defendant who suffered from mental illness both to waive his right to counsel and to plead guilty, so long as he was competent to stand trial and knowingly and voluntarily waived trial and the counsel right. Id., at 391, 400. It was “never the rule at common law” that a defendant could be competent to stand trial and yet incompetent to either exercise or give up some of the rights provided for his defense. Id., at 404 (Kennedy, J., concurring in part and concurring in judgment). We rejected the invitation to craft a higher competency standard for waiving counsel than for standing trial. That proposal, we said, was built on the “flawed premise” that a defendant’s “competence to represent himself” was the relevant measure: “[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself.” Id., at 399. We grounded this on Faretta’s candid acknowledgment that the Sixth Amendment protected the defendant’s right to conduct a defense to his disadvantage. 509 U. S. at 399-400.
B
The Court is correct that this case presents a variation on Godinez: It presents the question not whether another constitutional requirement (in Godinez, the proposed higher degree of competence required for a waiver) limits a defendant’s constitutional right to elect self-representation, but whether a State’s view of fairness (or of other values) permits it to strip the defendant of this right. But that makes the question before us an easier one. While one constitu *185 tional requirement must yield to another in case of conflict, nothing permits a State, because of its view of what is fair, to deny a constitutional protection. Although “the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial,” it “does not follow that the rights can be disregarded so long as the trial is, on the whole, fair.” United States v. Gonzalez-Lopez, 548 U. S. 140, 145 (2006). Thus, although the Confrontation Clause aims to produce fairness by ensuring the reliability of testimony, States may not provide for unconfronted testimony to be used at trial so long as it is reliable. Crawford v. Washington, 541 U. S. 36, 61 (2004). We have rejected an approach to individual liberties that “‘abstracts from the right to its purposes, and then eliminates the right.’ ” Gonzalez-Lopez, supra, at 145 (quoting Maryland v. Craig, 497 U. S. 836, 862 (1990) (Scalia, J., dissenting)).
Until today, the right of self-representation has been accorded the same respect as other constitutional guarantees. The only circumstance in which we have permitted the State to deprive a defendant of this trial right is the one under which we have allowed the State to deny other such rights: when it is necessary to enable the trial to proceed in an orderly fashion. That overriding necessity, we have said, justifies forfeiture of even the Sixth Amendment right to be present at trial — if, after being threatened with removal, a defendant “insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.” Illinois v. Allen, 397 U. S. 337, 343 (1970). A pro se defendant may not “abuse the dignity of the courtroom,” nor may he fail to “comply with relevant rules of procedural and substantive law,” and a court may “terminate” the self-representation of a defendant who “deliberately engages in serious and obstructionist misconduct.” Faretta, supra, at 834-835, n. 46. This ground for terminating self-representation is unavailable here, however, because Ed *186 wards was not even allowed to begin to represent himself, and because he was respectful and compliant and did not provide a basis to conclude a trial could not have gone forward had he been allowed to press his own claims.
Beyond this circumstance, we have never constrained the ability of a defendant to retain “actual control over the case he chooses to present to the jury”—what we have termed “the core of the Faretta right.” Wiggins, 465 U. S., at 178. Thus, while Faretta recognized that the right of self-representation does not bar the court from appointing standby counsel, we explained in Wiggins that “[t]he pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.” 465 U. S., at 174. Furthermore, because “multiple voices ‘for the defense’ ” could “confuse the message the defendant wishes to convey,” id., at 177, a standby attorney’s participation would be barred when it would “destroy the jury’s perception that the defendant is representing himself,” id., at 178.
As I have explained, I would not adopt an approach to the right of self-representation that we have squarely rejected for other rights — allowing courts to disregard the right when doing so serves the purposes for which the right was intended. But if I were to adopt such an approach, I would remain in dissent, because I believe the Court’s assessment of the purposes of the right of self-representation is inaccurate to boot. While there is little doubt that preserving individual “ ‘dignity’ ” (to which the Court refers), ante, at 176, is paramount among those purposes, there is equally little doubt that the loss of “dignity” the right is designed to prevent is not the defendant’s making a fool of himself by presenting an amateurish or even incoherent defense. Rather, the dignity at issue is the supreme human dignity of being master of one’s fate rather than a ward of the State — the *187 dignity of individual choice. Faretta explained that the Sixth Amendment’s counsel clause should not be invoked to impair “ ‘the exercise of [the defendant’s] free choice’ ” to dispense with the right, 422 U. S., at 815 (quoting Adams, 817 U. S., at 280); for “whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice,” 422 U. S., at 833-834. Nine years later, when we wrote in Wiggins that the self-representation right served the “dignity and autonomy of the accused,” 465 U. S., at 177, we explained in no uncertain terms that this meant according every defendant the right to his say in court. In particular, we said that individual dignity and autonomy barred standby counsel from participating in a manner that would “destroy the jury’s perception that the defendant is representing himself,” and meant that “the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury.” Id., at 178. In sum, if the Court is to honor the particular conception of “dignity” that underlies the self-representation right, it should respect the autonomy of the individual by honoring his choices knowingly and voluntarily made.
A further purpose that the Court finds is advanced by denial of the right of self-representation is the purpose of ensuring that trials “appear fair to all who observe them.” Ante, at 177 (internal quotation marks omitted). To my knowledge we have never denied a defendant a right simply on the ground that it would make his trial appear less “fair” to outside observers, and I would not inaugurate that principle here. But were I to do so, I would not apply it to deny a defendant the right to represent himself when he knowingly and voluntarily waives counsel. When Edwards stood to say that “I have a defense that I would like to represent or present to the Judge,” App. 523a, it seems to me the epitome of both actual and apparent unfairness for the judge to say, I have heard “your desire to proceed by yourself and *188 I’ve denied your request, so your attorney will speak for you from now on,” id., at 530a.
Ill
It may be that the Court permits a State to deprive mentally ill defendants of a historic component of a fair trial because it is suspicious of the constitutional footing of the right of self-representation itself. The right is not explicitly set forth in the text of the Sixth Amendment, and some Members of this Court have expressed skepticism about Faretta’s holding. See Martinez, 528 U. S., at 156-158 (questioning relevance of historical evidence underlying Faretta’s holding); 528 U. S., at 164 (Breyer, J., concurring) (noting “judges closer to the firing line have sometimes expressed dismay about the practical consequences” of the right of self-representation).
While the Sixth Amendment makes no mention of the right to forgo counsel, it provides the defendant, and not his lawyer, the right to call witnesses in his defense and to confront witnesses against him, and counsel is permitted to assist in “his defence” (emphasis added). Our trial system, however, allows the attorney representing a defendant “full authority to manage the conduct of the trial” — an authority without which “[t]he adversary process could not function effectively.” Taylor v. Illinois, 484 U. S. 400, 418 (1988); see also Florida v. Nixon, 543 U. S. 175, 187 (2004). We have held that “the client must accept the consequences of the lawyer's decision to forgo cross-examination, to decide not to put certain witnesses on the stand, or to decide not to disclose the identity of certain witnesses in advance of trial.” Taylor, supra, at 418. Thus, in order for the defendant’s right to call his own witnesses, to cross-examine witnesses, and to put on a defense to be anything more than “a tenuous and unacceptable legal fiction,” a defendant must have consented to the representation of counsel. Faretta, 422 U. S., at 821. Otherwise, “the defense presented is not the de *189 fense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.” Ibid.
The facts of this case illustrate this point with the utmost clarity. Edwards wished to take a self-defense case to the jury. His counsel preferred a defense that focused on lack of intent. Having been denied the right to conduct his own defense, Edwards was convicted without having had the opportunity to present to the jury the grounds he believed supported his innocence. I do not doubt that he likely would have been convicted anyway. But to hold that a defendant may be deprived of the right to make legal arguments for acquittal simply because a state-selected agent has made different arguments on his behalf is, as Justice Frankfurter wrote in Adams, supra, at 280, to “imprison a man in his privileges and call it the Constitution.” In singling out mentally ill defendants for this treatment, the Court’s opinion does not even have the questionable virtue of being politically correct. At a time when all society is trying to mainstream the mentally impaired, the Court permits them to be deprived of a basic constitutional right — for their own good.
Today’s holding is extraordinarily vague. The Court does not accept Indiana’s position that self-representation can be denied “‘where the defendant cannot communicate coherently with the court or a jury,’ ” ante, at 178. It does not even hold that Edwards was properly denied his right to represent himself. It holds only that lack of mental competence can under some circumstances form a basis for denying the right to proceed pro se, ante, at 167. We will presumably give some meaning to this holding in the future, but the indeterminacy makes a bad holding worse. Once the right of self-representation for the mentally ill is a sometime thing, trial judges will have every incentive to make their lives easier—to avoid the painful necessity of deciphering occasional pleadings of the sort contained in the Appendix to today’s opinion—by appointing knowledgeable and literate counsel.
*190 Because I think a defendant who is competent to stand trial, and who is capable of knowing and voluntary waiver of assistance of counsel, has a constitutional right to conduct his own defense, I respectfully dissent.