

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00140-CR

CHARISE LYNNE DAVIS LOGAN                    APPELLANT

V.

THE STATE OF TEXAS                              STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY
### TRIAL COURT NO. 1378668

----------

## OPINION

----------

A jury convicted Appellant Charise Lynne Davis Logan of criminal trespass after a trial at which she represented herself. The jury found Appellant guilty and assessed punishment at sixty days' confinement in the Tarrant County jail, probated for twelve months. The trial court sentenced Appellant accordingly but suspended imposition of the sentence, placing Appellant on community supervision for twelve months.

Appellant brings three issues on appeal, challenging the trial court's determination of her competence to stand trial and to represent herself, questioning the voluntariness of her waiver of the right to counsel, and challenging the constitutionality of the trial court's failure to appoint counsel to represent her during mental competence proceedings. Because, under the unique and limited facts presented here, the trial court reversibly erred in allowing Appellant to represent herself during pretrial and trial proceedings, we reverse the trial court's judgment and remand this case to the trial court for proceedings consistent with this opinion.

**Facts**

On June 23, 2014, Appellant was given a trespass warning by Officer Arvind Isaac of the University of Texas at Arlington (UTA) Police Department. Isaac had responded to a complaint that someone was handing out flyers without authorization. The complainant provided a description of the person, what the person was wearing, and the sign the person carried. En route to the area, Isaac saw Appellant, who matched the description the complainant had provided. Isaac spoke with Appellant to determine if she had prior authorization to distribute her flyers, which described what she believed to be various conspiracies against her. After running a records check, Isaac discovered that Appellant had previously been issued a criminal trespass warning by UTA police and that the warning had expired. Isaac issued Appellant another criminal

2

trespass warning, warning her that returning to campus within six months could result in her arrest. Appellant did not sign this warning.

On July 1, 2014, Kris Ramirez, another UTA police officer, was dispatched in response to a call that Appellant was in the Continuing Education Workforce building on the UTA campus, in violation of the criminal trespass warning. When Ramirez arrived at the building, Appellant was in a computer lab in the building. Ramirez identified Appellant, verified that she had an active criminal trespass warning, and arrested her. In keeping with UTA's policy, Ramirez also issued Appellant a new criminal trespass warning, warning her not to return to the campus for six months. The State charged Appellant with trespass based on the July 1, 2014 events.

At a pretrial hearing, the trial court inquired whether Appellant intended to defend herself. The trial court asked Appellant if she understood that she had a right to an attorney and that she had the right to have an attorney appointed if she could not afford one. Appellant answered that she did understand. The trial court asked her about her understanding of the law and legal procedure, her level of education, and discovery requests. Appellant admitted that she did not know the rules of evidence, did not understand the concept of the jury charge, and did not understand the rules of criminal procedure relating to the charging document but declared her intent to represent herself because, at least in part, she did not believe that she could find an attorney who was not part of the

3

conspiracies against her. The trial court found that Appellant had freely and voluntarily waived her right to counsel.

The trial court then asked Appellant if she had ever been treated for a mental illness. Appellant replied, "Probably ten years or more ago surrounding a divorce." The trial court then stated that "that at least raise[d] the question about whether or not [she] might or might not be competent," ordered her to be evaluated for competency, and appointed psychologist Barry Norman to perform the evaluation.

After the evaluation, Norman reported to the trial court that Appellant had "a diagnosable mental illness/emotional disturbance" and that his impression of that illness is that it is "unspecified personality disorder." That diagnosis is given when a person "exhibits features of more than one specific personality disorder with regard to cognition, interpersonal relationships and impulse control." Norman diagnosed Appellant's level of impairment as "[m]ild to moderate." He found that her anxiety, unusual or odd thought content, and below-average insight and judgment supported his diagnosis.

Norman found Appellant competent to stand trial and also found that her mental illness would not impact her ability to consult with counsel. But he also found that she exhibited some hypervigilance and some paranoia, and he opined that her thought patterns or personality might make her "a difficult defendant with whom to work." Further, while Norman found that Appellant had no "major comprehension difficulties" and that she "verbalized a realistic understanding of

4

[her then] current legal situation," he also found that she might be "unclear regarding certain legal strategies" absent the help of counsel. He summarized:

> Without a doubt, this lady does present with some unusual thoughts. However, her pre-conceived ideas do not interfere with her ability to interact with the court or to understand current prosecution. She lacks a great deal of insight into her behavior and does not understand how her behavior impacts those around her. The obvious concern to the court is how to understand her verbal challenges to the court and lack of general cooperation with the normal procedures following an indictment and detention. Her actions are not due to any psychotic mental processes and her behaviors are best understood to be of a volitional nature. The rigidity of her thought process and somewhat demanding demeanor will not likely remit noticeably in the near future.

Norman's opinion was limited to the information available on February 6, 2015. He gave no opinion on whether Appellant was competent to represent herself at trial.

At a pretrial hearing thereafter, Appellant rejected two plea offers—to plead guilty and receive credit for time served or to plead no contest with credit for time served.

At that same hearing, the trial court also addressed a verified, notarized, pro se document filed by Appellant on March 5, 2015. This document details Appellant's beliefs about how she had been "hunted by a secret society and currently, a sex ring for several years of [her] life" and outlines a pattern of harassment and surveillance of her conducted by the secret society. Appellant implicates President Barack Obama and the family of former President George H.W. Bush in this conspiracy. According to the pro se document, the secret

5

society surveilled Appellant between 2011 and 2015. Appellant alleges in the document that the secret society used witchcraft, voodoo, and blackmail to force unwilling participants to engage in activities against her. She further alleges that the conspiracy was after her because of the auditory and visual gifts bestowed upon her by God. The trial court determined that the untitled document was not a motion and requested no relief and that therefore there was nothing in the document for the trial court to rule on.

In her opening statement, Appellant told the jury that she had "been harassed for a very long time by a secret society." In her defense, she testified in narrative form. Among other statements, Appellant stated that she had not been read her *Miranda*[1] rights by Ramirez, and she described being persecuted by a secret society that she had refused to join.

**The Law**

Although Appellant raises other constitutional issues, they all turn on whether, under the peculiar facts and circumstances of this case, the trial court erred in permitting Appellant to represent herself. Fundamental to the principle of due process is the right of a person accused of committing a criminal offense to competent representation before the tribunal.[2] A defendant is entitled to be

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

[2] *See Moore v. State of Michigan*, 355 U.S. 155, 159, 78 S. Ct. 191, 194 (1957) ("We hold that [Moore's] case falls within that class in which the

6

represented by counsel unless the defendant intelligently and knowingly waives this right.[3]  A defendant who waives the right to counsel out of fear does not waive that right voluntarily.[4]  The Supreme Court of the United States has held,

> [W]here a person convicted in a state court has not intelligently and understandingly waived the benefit of counsel and where the circumstances show that his rights could not have been fairly protected without counsel, the Due Process Clause invalidates his conviction . . . .  Where the right to counsel is of such critical importance as to be an element of Due Process under the Fourteenth Amendment, a finding of waiver is not lightly to be made.[5]

Although a defendant in a criminal trial has the right to represent herself, the right to represent oneself is not absolute.[6]  The test for competence to stand trial is not alone the test for competence to represent oneself at trial.[7]  Rather, when determining the ability of a defendant to represent herself pro se, the trial court should take a realistic account of the particular defendant's capacity to

---

intervention of counsel, unless intelligently waived by the accused, is an essential element of a fair hearing.").

[3]U.S. Const. amends. VI & XIV; Tex. Const. art I, § 10; Tex. Code Crim. Proc. art. 1.05 (West 2005); *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975).

[4]*Moore*, 355 U.S. at 164–65, 78 S. Ct. at 196–97.

[5]*Id.* at 161, 78 S. Ct. at 195 (internal quotation marks and citation omitted).

[6]*See Indiana v. Edwards*, 554 U.S. 164, 171, 128 S. Ct. 2379, 2384 (2008); *Martinez v. Ct. App. of Cal., Fourth App. Dist.*, 528 U.S. 152, 163, 120 S. Ct. 684, 692 (2000); *Faretta*, 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46.

[7]*Edwards*, 554 U.S. at 175, 128 S. Ct. at 2386.

represent herself.[8]   A person could be capable of working with counsel at trial and thus meet the test for competency set out in *Dusky v. United States*,[9] yet at the same time be unable to carry out the basic tasks necessary to present her own defense without the assistance of counsel.[10]   The *Edwards* court reminds us that "proceedings must not only be fair, they must appear fair to all who observe them."[11]   The Constitution thus "permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."[12]

**Analysis**

Rule of appellate procedure 33.1 "does not apply to rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal."[13]   We may therefore analyze

---

[8]*Id.* at 177–78, 128 S. Ct. at 2387–88.

[9]362 U.S. 402, 402, 80 S. Ct. 788, 789 (1960).

[10]*Edwards*, 554 U.S. at 175–76, 128 S. Ct. at 2386.

[11]*Id.* at 177, 128 S. Ct. at 2387 (internal quotation marks and citation omitted).

[12]*Id.* at 178, 128 S. Ct. at 2388.

[13]*State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009); *see Grado v. State*, 445 S.W.3d 736, 741, 743 (Tex. Crim. App. 2014); *Henson v. State*, 407 S.W.3d 764, 767 (Tex. Crim. App. 2013), *cert. denied*, 134 S. Ct. 934

Appellant's complaints concerning deprivation of counsel regardless of preservation.[14]

Appellant's response to the trial court that she had received previous psychiatric treatment prompted the trial court to order Norman to examine her to determine whether she was competent to stand trial. Norman filed his report stating, in part, that Appellant was competent to assist her counsel, but she was suffering from a diagnosable mental illness that affected cognition, impulse control, and interpersonal relationships. Although Norman found that this disorder would not impact her ability to consult with counsel, he also found that she did exhibit unusual or odd thought content and that her insight and judgment were below average. Norman reported that Appellant displayed organized thoughts and did not spontaneously espouse any delusional beliefs that would interfere with the ability to assist counsel, but he also found that she "expressed some hyper-vigilance and perhaps some paranoia." He opined that these conditions did not interfere with her "ability to interact with the court" yet also noted the possibility that her "thought pattern or . . . personality style [might] make [her] a difficult defendant with whom to work." Norman noted that

(2014); *Reyes v. State*, 361 S.W.3d 222, 228–29 (Tex. App.—Fort Worth 2012, pet. ref'd).

[14]*See Henson*, 407 S.W.3d at 768; *Denstitt v. State*, No. 02-14-00172-CR, 2015 WL 4043285, at *3 (Tex. App.—Fort Worth July 2, 2015, no pet.) (mem. op., not designated for publication).

Appellant exhibited "mild paranoid mentation" but also noted that she "displayed no evidence of a disorder which would significantly impair her current understanding of reality." At the same time, he noted that Appellant "present[ed] with some unusual thoughts," "lack[ed] a great deal of insight into her behavior[,] and d[id] not understand how her behavior impacts those around her." Norman noted that the trial court's "obvious concern" would be "how to understand [Appellant's] verbal challenges to the court and lack of general cooperation with the normal procedures following an indictment and detention," and he opined that "[t]he rigidity of her thought process and somewhat demanding demeanor [would] not likely remit noticeably in the near future."

Indeed, in the month following the competency evaluation, these "unusual thoughts" noted by Norman were shown to include Appellant's belief that a secret society was using witchcraft, voodoo, and blackmail to force unwilling participants to engage in activities against her because of the auditory and visual gifts bestowed upon her by God. She believed that she was the subject of their surveillance and the surveillance of a sex ring between 2011 and 2015. She believed that President Obama and the family of former President George H.W. Bush were involved in the conspiracy.

Although it is unclear to what extent Norman was made aware of Appellant's belief that the secret society was after her, the trial court was aware of her conspiracy beliefs before trial. In addition, this conspiracy was the defense she raised during trial. Yet the trial court allowed her to represent herself in the

10

trial on the merits and allowed her to continue to represent herself even after she raised this bizarre defense.

The record is disturbing. At a pretrial hearing, the trial court asked Appellant if she understood that she had a right to an attorney and that she had the right to have an attorney appointed if she could not afford one. Appellant answered that she did understand. The trial court then asked Appellant a number of questions about her understanding of her responsibilities in representing herself. The trial court then had this exchange with Appellant:

THE COURT: Do you understand that it is generally unwise to represent yourself?

[Appellant]: And I understand also, Your Honor, that I attempted to get legal counsel, and I was unable to do so for whatever political reasons may or may not have existed to obstruct that.

THE COURT: Did you apply for court-appointed counsel?

[Appellant]: I did not apply because my trust was broken with the system, sir. And I do apologize. That's not your fault; you are newly here. It is not everybody else's fault. You didn't know.

. . . .

THE COURT: No one denied you counsel?

[Appellant]: No one denied me counsel. It was just a suspicion of me concerning proper representation that I would be fully represented.

THE COURT: Are you today asking to be—to have counsel appointed for you?

[Appellant]: I am not asking that today, sir. Because my suspicion or my—the bruising of whatever

11

|  |  |
|---|---|
|  | behaviors that I've encountered within the system has got me to that point where I do not have trust that I would be appropriately represented. |
| THE COURT: | Understanding these admonishments, is it still your desire to represent yourself and give up your right to be represented by an attorney? |
| [Appellant]: | At this time, yes, it is still, sir. |
| THE COURT: | Is your decision freely and voluntarily made? |
| [Appellant]: | Concerning all the circumstances that I've announced to you at this point in time, the best I can do is, yes. |

When Appellant filed her waiver of counsel with the trial court, she wrote on the back of the waiver, "It is my assumption, that I won't find an attorney, who won't be manipulated by U.T.A. and other corrupt forces attempting to discredit me, in this situation alleged CTW and other situations."

Not only must a defendant charged with a criminal offense be competent to stand trial and, separately, competent to conduct her own defense without assistance of counsel should she so choose, her waiver of counsel in such instance must be knowingly and voluntarily exercised. That is, she must be competent to waive counsel.[15] We hold that on this record, Appellant was entitled to representation by an attorney during the pretrial and trial proceedings. Her waiver of counsel was based on her fear that the attorney would be part of

---

[15]*See Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541 (stating that the record must establish that the pro se defendant "knows what he is doing and his choice is made with eyes open") (internal quotation marks and citation omitted).

the system of harassment that she believed she had been subjected to by a secret society and by a sex ring over the past several years. Consequently, the record does not support a determination that her waiver of counsel was voluntary or that a realistic account of her capacity to represent herself established any such capacity. Instead, the record supports the conclusion that Appellant's rights to counsel and due process were violated.[16]

The trial court properly ordered Appellant to be examined to determine whether she was incompetent to stand trial. But the trial court did not appoint counsel to represent her regarding her mental competence before the competency evaluation, or at all until after she filed a pro se notice of appeal. Within her third issue, Appellant argues that article 46B.006 of the code of criminal procedure required that she be represented by counsel. Article 46B.006 provides,

> (a) A defendant is entitled to representation by counsel before any court-ordered competency evaluation and during any proceeding at which it is suggested that the defendant may be incompetent to stand trial.
>
> (b) If the defendant is indigent and the court has not appointed counsel to represent the defendant, the court shall appoint counsel as necessary to comply with Subsection (a).[17]

---

[16] *See Moore*, 355 U.S. at 164–65, 78 S. Ct. at 196–97.

[17] Tex. Code Crim. Proc. Ann. art. 46B.006 (West 2006).

13

We hold that the trial court violated article 46B.006 by failing to appoint counsel for Appellant before the competency evaluation. (Appellant was found indigent only after she filed a notice of appeal.) Nor do we find anything in the record that would justify the trial court's failure to provide Appellant with counsel at that preliminary juncture of the proceedings. We conclude that the trial court abused its discretion by allowing Appellant to proceed as her own counsel. This error resulted in Appellant being put to trial with incompetent counsel, a violation of her constitutional rights to counsel and due process.

This case is distinguishable from a 2013 unpublished case from this court, *Little v. State*.[18] The *Little* trial court should have appointed counsel to represent Little for the determination of competence but, in violation of article 46B.006, did not.[19] The *Little* court, however, later appointed counsel, and counsel had ample opportunity to request a jury trial on competence.[20] Additionally, because he refused appointed counsel, Little had standby counsel for the trial itself.[21] This

---

[18]No. 02-12-00086-CR, 2013 WL 5593297 (Tex. App.—Fort Worth Oct. 10, 2013, no pet.) (mem. op., not designated for publication).

[19]*Id.* at *4.

[20]*See id.* at *1.

[21]*Id.* at *5.

14

court held the error harmless in *Little*.[22] Appellant here, though, had no appointed counsel, standby or otherwise, before her conviction and sentence.

Structural error is error that "'affect(s) the framework within which the trial proceeds, rather than simply an error in the trial process itself.'"[23] Total deprivation of counsel at trial is structural error.[24] The trial court deprived Appellant of counsel by accepting her waiver of counsel that was neither voluntary nor knowing. Such error is automatically reversible.[25]

We therefore sustain that part of Appellant's first issue challenging the trial court's decision to allow her to represent herself and her second and third issues, which are dispositive. We do not reach the remainder of her first issue, which challenges the trial court's determination that she was competent to stand trial.

---

[22] *Id.* at *4–*5.

[23] *Jordan v. State*, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 1265 (1991)); *see also United States v. Davila*, 133 S. Ct. 2139, 2149 (2013) (explaining that structural errors "include denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt").

[24] *See Gideon v. Wainwright*, 372 U.S. 335, 342–45, 83 S. Ct. 792, 795–97 (1963).

[25] *See id.*

**Conclusion**

Having sustained part of Appellant's first issue as well as her second and third issues, which are dispositive, we reverse the trial court's judgment and remand this cause to the trial court for proceedings consistent with this opinion.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, WALKER, and SUDDERTH, JJ.

PUBLISH

DELIVERED: February 4, 2016

16