MARTIN, Circuit Judge,
concurring:
Criminal defendants have a constitutional right to represent themselves. This is true no matter how serious or complex their trial. It doesn’t matter that the defendant has no specialized legal knowledge or experience which allow him to effectively advocate for himself. Neither does it matter that with no lawyer, a capital defendant is not likely able to give the jury the information it needs to make a fair and reliable decision about not only his guilt, but his punishment- Binding Supreme Court precedent requires only that a defendant make a valid waiver of his right to counsel in order to proceed on his own. Faretta v. California, 422 U.S. 806, 834-36, 95 S.Ct. 2525, 2540-41, 45 L.Ed.2d 562 (1975). Almost no one thinks it is a good idea for criminal defendants to represent themselves at trial. Even the Supreme Court in Faretta recognized “[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel’s guidance than by their own unskilled efforts.” Id. at 834, 95 S.Ct. at 2540.
I agree with the majority’s judgment that Walter Leroy Moody is not entitled to habeas relief. He did not present his Far-etta claim to the Alabama Supreme Court, so he did not exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). I write *812 separately because this trial record demonstrates the troubling consequences of Faretta—particularly in capital cases. Representing himself at his capital trial, Mr. Moody made no objection to any evidence. He made no opening or closing argument to the jury. He failed to put on any defense. He essentially refused to participate in the trial. During the part of the trial in which the jury was called upon to decide whether he should be put to death, Mr. Moody gave them no evidence in mitigation. After this paltry presentation, it is of little surprise that the jury found Mr. Moody guilty and then, by a vote of 11-1, recommended that he be sentenced to death. This kind of one-sided proceeding is concerning not only because it fails to effectively protect the constitutional rights of capital defendants, but also because it fails to protect the public’s interest in fair and accurate criminal proceedings. As a U.S. court of appeals we are bound by Faretta, but I hope the Supreme Court will reconsider the contours of this rule in the context of capital trials.
I.
The Supreme Court recognized the constitutional right to self-representation in 1975, holding that' a criminal defendant could proceed without counsel “when he voluntarily and intelligently elects to do so.” Faretta, 422 U.S. at 807, 95 S.Ct. at 2527. The Court acknowledged at the time that its holding was in discord with a long line of precedent emphasizing that “the help of a lawyer is essential to assure the defendant a fair trial.” Id. at 832-33, 95 S.Ct. at 2540. See, e.g., Argersinger v. Hamlin, 407 U.S. 25, 31, 92 S.Ct. 2006, 2009, 32 L.Ed.2d 530 (1972) (“The assistance of counsel is often a requisite to the very existence of a fair trial.”); Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932) (“The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.”).
The dissenters in Faretta criticized the majority’s holding as inconsistent with the defendant’s right to a fair trial and society’s interest in just criminal proceedings. Chief Justice Burger predicted the right to self-representation would “only add to the problems of an already malfunctioning criminal justice system.” Faretta, 422 U.S. at 837, 95 S.Ct. at 2542 (Burger, C.J., dissenting). He said “th[e] goal [of ensuring justice] is ill-served, and the integrity of and public confidence in the system are undermined, when an easy conviction is obtained due to the defendant’s ill-advised decision to waive counsel.” Id. at 839, 95 S.Ct. at 2543. Along the same lines, Justice Blackmun called the decision “a drastic curtailment of the interest of the State in seeing that justice is done in a real and objective sense.” Id. at 851, 95 S.Ct. at 2549 (Blackmun, J., dissenting).
The passage of time has done nothing to allay these fears. Indeed the Supreme Court has since observed that “experience has taught us that a pro se defense is usually a bad defense, particularly when compared to a defense provided by an experienced criminal defense attorney.” Martinez v. Court of Appeal of Cal., Fourth Appellate Dist., 528 U.S. 152, 161, 120 S.Ct. 684, 691, 145 L.Ed.2d 597 (2000) (quotation omitted). And others have expressed dismay with the practical consequences of Faretta’s holding. See, e.g., United States v. Farhad, 190 F.3d 1097, 1106-07 (9th Cir. 1999) (Reinhardt, J., concurring) (noting that the right to self-representation “frequently, though not always, conflicts squarely and inherently with the right to a fair trial”). These concerns are certainly at their apex in the context of capital trials, where the defendant’s life is at stake.
*813 II.
We know that high quality legal representation is essential in capital trials. Capital trials are more complex. They have their own unique set of rules. See Murray v. Giarratano, 492 U.S. 1, 28, 109 S.Ct. 2765, 2780, 106 L.Ed.2d 1 (1989) (Stevens, J., dissenting) (“[T]his Court’s death penalty jurisprudence unquestionably is difficult even for a trained lawyer to master.”); ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 1.1, History of Guideline (rev.. Feb. 2003), reprinted in 31 Hofstra L. Rev. 913, 921 (2003) (“[Bjecause of the extraordinary complexity and demands of capital cases, a significantly greater degree of skill and experience on the part of defense counsel is required than in a noncapital case.”). Because of the severity and finality of the death penalty, the Supreme Court has imposed a number of procedural protections that apply only in capital cases. These constitutionally required protections seek to ensure greater reliability in the decision making at both the guilt and penalty phases of capital trials. See, e.g., Beck v. Alabama, 447 U.S. 625, 627, 637-38, 100 S.Ct. 2382, 2384, 2389-90, 65 L.Ed.2d 392 (1980) (holding that the jury must be instructed on lesser included offenses supported by the evidence in the guilt phase of a capital trial); Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978) (plurality opinion) (requiring consideration of any relevant mitigating evidence during the penalty phase of a capital trial). When capital defendants are tried without the help of a lawyer, however, these extra protections can be meaningless.
This is borne out by what happened at Mr. Moody’s trial after the judge found he had waived his right to counsel. Or better said—what didn’t happen. Mr. Moody made no opening statement or closing argument. He made no objections to the evidence, and he called no witnesses. And the crucial penalty phase of trial was no different. The State presented the jury with its case in aggravation and asked the jurors to recommend a sentence of death. Mr. Moody sat silent, offering nothing in mitigation. See Moody v. State, 888 So.2d 532, 552-53 (Ala. Crim. App. 2003).
The penalty phase of a capital trial is a separate proceeding in which the jury is asked to decide whether the person it just convicted of a capital offense should be put to death by act of the state, or instead receive a life sentence. E.g., Ala. Code § 13A-5-45, At sentencing, the prosecutor asks the jury to sentence the defendant to death. Often, as was the case in Mr. Moody’s trial, the prosecutor can highlight the unfathomable cruelty shown by the defendant, as well as the resulting horrific and senseless deaths. The job then falls to the defense counsel to educate the jury about the defendant by telling his story in such a way as to communicate how this defendant came to do this horrible thing. It is well established that “before a jury can undertake the grave task of imposing a death sentence, it must be allowed to consider a defendant’s moral culpability and decide whether death is an appropriate punishment for that individual in light of his personal history and characteristics and the circumstances of the offense.” Abdul-Kabir v. Quarterman, 550 U.S. 233, 263-64, 127 S.Ct. 1654, 1674, 167 L.Ed.2d 585 (2007). But when the jury hears only one side of the story, it can’t do that. Without knowing a person’s background and character, a jury has no way of knowing whether death is the appropriate sentence.
More than 80 years ago, the Supreme Court told us that to allow a person charged with a capital offense to be “prosecuted by counsel for the state without *814 assignment of counsel for his defense, tried, convicted, and sentenced to death ... would be little short of judicial murder.” Powell, 287 U.S. at 72, 53 S.Ct. at 65. But even now our precedent permits capital defendants to undermine their own defense by choosing to proceed without counsel. State courts are not required to appoint standby counsel to assist pro se capital defendants, and the trial judge declined to do so for Mr. Moody. Moody, 888 So.2d at 552. Allowing a capital defendant to go before a jury without the assistance of counsel undermines the legitimacy of the criminal trial that results in his sentence of death. See People v. Bloom, 48 Cal.3d 1194, 259 Cal.Rptr. 669, 774 P.2d 698, 727 (1989) (Mosk, J., concurring and dissenting) (“Faretta is not a sword for the defendant; he may not use the right of self-representation to ... undermine the adversary process.”).
The Supreme Court recently reaffirmed the continuing vitality of Faretta. Indiana v. Edwards, 554 U.S. 164, 178, 128 S.Ct. 2379, 2388, 171 L.Ed.2d 345 (2008) (explicitly declining to overrule Faretta). But the Court’s decision in Edwards also confirmed that the right to self-representation is not absolute and may be limited under certain circumstances. See id. (holding that a state may deny a defendant the right to represent himself if he lacks the mental competency to conduct his own defense); see also Martinez, 528 U.S. at 163, 120 S.Ct. at 692 (holding there is no right to self-representation in a direct criminal appeal); McKaskle v. Wiggins, 465 U.S. 168, 184, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984) (holding that standby counsel may be appointed over a pro se defendant’s objection). There are good reasons to limit the scope of this right in capital trials. We should not allow defendants to use the criminal justice system as “an instrument of self-destruction.” Faretta, 422 U.S. at 840, 95 S.Ct. at 2543 (Burger, C.J., dissenting).