## MARTINEZ *v.* COURT OF APPEAL OF CALIFORNIA, FOURTH APPELLATE DISTRICT

No. 98–7809.   Argued November 9, 1999—Decided January 12, 2000

STEVENS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, KENNEDY, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined. KENNEDY, J., *post*, p. 164, and BREYER, J., *post*, p. 164, filed concurring opinions. SCALIA, J., filed an opinion concurring in the judgment, *post*, p. 165.

*Ronald D. Maines*, by appointment of the Court, 526 U. S. 1110, argued the cause and filed briefs for petitioner.

*Robert M. Foster*, Supervising Deputy Attorney General of California, argued the cause for respondent. With him on the brief were *Bill Lockyer*, Attorney General, *David P. Druliner*, Chief Assistant Attorney General, *Gary W.*

*Schons,* Senior Assistant Attorney General, and *Laura Whitcomb Halgren,* Supervising Deputy Attorney General.*

JUSTICE STEVENS delivered the opinion of the Court.

The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment.[1] In *Faretta* v. *California,* 422 U. S. 806 (1975), we decided that the defendant also "has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so." *Id.,* at 807. Although that statement arguably embraces the entire judicial proceeding, we also phrased the question as whether a State may "constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." *Ibid.* Our conclusion in *Faretta* extended only to a defendant's "constitutional right to conduct his own defense." *Id.,* at 836. Accordingly, our specific holding was confined to the right to defend oneself at trial. We now address the different question whether the reasoning in support of that holding also applies when the defendant becomes an appellant and assumes the burden of persuading a reviewing court that the conviction should be reversed. We have concluded that it does not.

I

Martinez describes himself as a self-taught paralegal with 25 years' experience at 12 different law firms. See App. 13.

---

*Kent S. Scheidegger* and *Charles L. Hobson* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging affirmance.

*Barbara E. Bergman* and *Ephraim Margolin* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae.*

[1] See, *e. g., Powell* v. *Alabama,* 287 U. S. 45 (1932); *Johnson* v. *Zerbst,* 304 U. S. 458 (1938); *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972).

While employed as an office assistant at a firm in Santa Ana, California, Martinez was accused of converting $6,000 of a client's money to his own use. He was charged in a two-count information with grand theft and the fraudulent appropriation of the property of another. He chose to represent himself at trial before a jury, because he claimed "'there wasn't an attorney on earth who'd believe me once he saw my past [criminal record].'" *Id.*, at 15. The jury acquitted him on Count 1, grand theft, but convicted him on Count 2, embezzlement. The jury also found that he had three prior convictions; accordingly, under California's "three strikes" law, the court imposed a mandatory sentence of 25-years-to-life in prison. See Cal. Penal Code Ann. §§ 667(d) and (e)(2) (West 1999). Martinez filed a timely notice of appeal as well as a motion to represent himself and a waiver of counsel. The California Court of Appeal denied his motion, and the California Supreme Court denied his application for a writ of mandate. While the California Supreme Court did not issue an opinion in this case, the Court of Appeal previously had explained:

> "There is no constitutional right to self-representation on the initial appeal as of right. The right to counsel on appeal stems from the due process and equal protection clauses of the Fourteenth Amendment, not from the Sixth Amendment, which is the foundation on which *Faretta* is based. The denial of self-representation at this level does not violate due process or equal protection guarantees." *People* v. *Scott*, 64 Cal. App. 4th 550, 554, 75 Cal. Rptr. 2d 315, 318 (1998).

We granted certiorari because Martinez has raised a question on which both state and federal courts have expressed conflicting views.[2] 526 U. S. 1064 (1999). We now affirm.

---

[2] Compare *Myers* v. *Collins*, 8 F. 3d 249, 252 (CA5 1993) (finding right of self-representation extends to appeals); *Campbell* v. *Blodgett*, 940 F. 2d 549 (CA9 1991) (same); *Chamberlain* v. *Ericksen*, 744 F. 2d 628, 630

## II

The *Faretta* majority based its conclusion on three inter-related arguments. First, it examined historical evidence identifying a right of self-representation that had been protected by federal and state law since the beginning of our Nation, 422 U. S., at 812–817. Second, it interpreted the structure of the Sixth Amendment, in the light of its English and colonial background, *id.*, at 818–832. Third, it concluded that even though it "is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts," a knowing and intelligent waiver "must be honored out of 'that respect for the individual which is the lifeblood of the law.' *Illinois* v. *Allen*, 397 U. S. 337, 350–351 [(1970)]." *Id.*, at 834. Some of the Court's reasoning is applicable to appellate proceedings as well as to trials. There are, however, significant distinctions.

The historical evidence relied upon by *Faretta* as identifying a right of self-representation is not always useful because it pertained to times when lawyers were scarce, often mistrusted, and not readily available to the average person accused of crime.[3] For one who could not obtain a lawyer,

(CA8 1984) (same); *Commonwealth* v. *Rogers*, 537 Pa. 581, 583, 645 A. 2d 223, 224 (1994) (same); *State* v. *Van Pelt*, 305 Ark. 125, 127, 810 S. W. 2d 27, 28 (1991) (same); *Webb* v. *State*, 274 Ind. 540, 542, 412 N. E. 2d 790, 792 (1980) (same); *Webb* v. *State*, 533 S. W. 2d 780, 784 (Tex. Crim. App. 1976) (same), with *United States* v. *Gillis*, 773 F. 2d 549, 560 (CA4 1985) (finding no right of self-representation on appeal); *Lumbert* v. *Finley*, 735 F. 2d 239, 246 (CA7 1984) (same); *Hill* v. *State*, 656 So. 2d 1271, 1272 (Fla. 1995) (same); *State* v. *Gillespie*, 898 S. W. 2d 738 (Tenn. Crim. App. 1994) (same).

[3] "The colonists brought with them an appreciation of the virtues of self-reliance and a traditional distrust of lawyers. When the Colonies were first settled, 'the lawyer was synonymous with the cringing Attorneys-General and Solicitors-General of the Crown and the arbitrary Justices of the King's Court, all bent on the conviction of those who opposed the King's prerogatives, and twisting the law to secure convictions.' This prejudice gained strength in the Colonies where 'distrust of lawyers became an institution.' Several Colonies prohibited pleading for hire in the

self-representation was the only feasible alternative to asserting no defense at all.  Thus, a government's recognition of an indigent defendant's right to represent himself was comparable to bestowing upon the homeless beggar a "right" to take shelter in the sewers of Paris.  Not surprisingly, early precedent demonstrates that this "right" was not always used to the defendant's advantage as a shield, but rather was often employed by the prosecution as a sword. The principal case cited in *Faretta* is illustrative.   In *Adams v. United States ex rel. McCann*, 317 U. S. 269 (1942), the Court relied on the existence of the right of self-representation as the basis for finding that an unrepresented defendant had waived his right to a trial by jury.[4]

---

17th century.   The prejudice persisted into the 18th century as 'the lower classes came to identify lawyers with the upper class.'   The years of Revolution and Confederation saw an upsurge of antilawyer sentiment, a 'sudden revival, after the War of the Revolution, of the old dislike and distrust of lawyers as a class.'"   *Faretta*, 422 U. S., at 826–827 (footnotes omitted).

[4] Similarly, in the state cases cited by the Court in *Faretta*, see 422 U. S., at 813, n. 9, the defendant's right to represent himself was often the predicate for upholding the waiver of an important right.   See, *e. g.*, *Mackreth* v. *Wilson*, 31 Ala. App. 191, 193, 15 So. 2d 112, 113 (1943) (failure of the defendant to request counsel equaled an "election" to proceed *pro se*); *Lockard* v. *State*, 92 Idaho 813, 822, 451 P. 2d 1014, 1023 (1969) (court relied on defendant's right of self-representation to uphold an uncounseled guilty plea, despite claims that it was coerced); *People* v. *Nelson*, 47 Ill. 2d 570, 268 N. E. 2d 2, 3 (1971) (defendant's *pro se* status is predicate for upholding waiver of indictment and jury trial and also to uphold guilty plea); *Allen* v. *Commonwealth*, 324 Mass. 558, 562–563, 87 N. E. 2d 192, 195 (1949) (life sentence upheld despite fact that indigent defendant was unable to procure counsel); *Westberry* v. *State*, 254 A. 2d 44, 46 (Me. 1969) (guilty plea upheld because defendant failed to claim indigency or to request counsel); *State* v. *Hollman*, 232 S. C. 489, 499, 102 S. E. 2d 873, 878 (1958) (right of defendant to represent himself used as basis for finding he had no right to appointed counsel).   But see *State* v. *Thomlinson*, 78 S. D. 235, 237, 100 N. W. 2d 121, 122 (1960) (vacating conviction based on court's failure to allow defendant to represent himself); *State* v. *Penderville*, 2 Utah 2d 281, 287, 272 P. 2d 195, 199 (1954) (same); *Cappetta* v. *State*, 204 So. 2d 913, 918 (Fla. App. 1967) (same), rev'd, *State* v. *Cappetta*, 216 So. 2d

It has since been recognized, however, that an indigent defendant in a criminal trial has a constitutional right to the assistance of appointed counsel, see *Gideon* v. *Wainwright*, 372 U. S. 335 (1963). Thus, an individual's decision to represent himself is no longer compelled by the necessity of choosing self-representation over incompetent or nonexistent representation; rather, it more likely reflects a genuine desire to " 'conduct his own cause in his own words.' " *Faretta*, 422 U. S., at 823 (footnote omitted). Therefore, while *Faretta* is correct in concluding that there is abundant support for the proposition that a right to self-representation has been recognized for centuries, the original reasons for protecting that right do not have the same force when the availability of competent counsel for every indigent defendant has displaced the need—although not always the desire—for self-representation.

The scant historical evidence pertaining to the issue of self-representation on appeal is even less helpful. The Court in *Faretta* relied upon the description of the right in § 35 of the Judiciary Act of 1789, 1 Stat. 92, which states that "the parties may plead and manage their own causes personally or by the assistance of such counsel . . . ." 422 U. S., at 812. It is arguable that this language encompasses appeals as well as trials. Assuming it does apply to appellate proceedings, however, the statutory right is expressly limited by the phrase "as by the rules of the said courts." 1 Stat. 92. Appellate courts have maintained the discretion to allow litigants to "manage their own causes"—and some such litigants have done so effectively.[5] That opportunity, however, has been consistently subject to each court's own rules.

---

749, 750 (Fla. 1968) (finding voluntary and intelligent waiver of right to proceed *pro se*).

[5] See, *e. g., SEC* v. *Sloan*, 436 U. S. 103 (1978) (*pro se* respondent argued, briefed, and prevailed in the Court of Appeals for the Second Circuit and this Court).

We are not aware of any historical consensus establishing a right of self-representation on appeal. We might, nonetheless, paraphrase *Faretta* and assert: No State or Colony ever forced counsel upon a convicted appellant, and no spokesman ever suggested that such a practice would be tolerable or advisable. 422 U. S., at 832. Such negative historical evidence was meaningful to the *Faretta* Court, because the fact that the "[dog] had not barked"[6] arguably demonstrated that early lawmakers intended to preserve the "long-respected right of self-representation" at trial. *Ibid.* Historical silence, however, has no probative force in the appellate context because there simply was no long-respected right of self-representation on appeal. In fact, the right of appeal itself is of relatively recent origin.

Appeals as of right in federal courts were nonexistent for the first century of our Nation, and appellate review of any sort was "rarely allowed." *Abney* v. *United States*, 431 U. S. 651, 656, n. 3 (1977). The States, also, did not generally recognize an appeal as of right until Washington became the first to constitutionalize the right explicitly in 1889.[7] There was similarly no right to appeal in criminal cases at common law, and appellate review of any sort was "limited" and "rarely used."[8] Thus, unlike the inquiry in *Faretta*, the historical evidence does not provide any support for an affirmative constitutional right to appellate self-representation.

The *Faretta* majority's reliance on the structure of the Sixth Amendment is also not relevant. The Sixth Amendment identifies the basic rights that the accused shall enjoy

---

[6] A. Conan Doyle, Silver Blaze, in The Complete Sherlock Holmes 383, 400 (1938).

[7] See Lobsenz, A Constitutional Right to An Appeal: Guarding Against Unacceptable Risks of Erroneous Conviction, 8 U. Puget Sound L. Rev. 375, 376 (1985). Although Washington was the first State to constitutionalize an appeal as of right, almost all of the States historically had some form of discretionary appellate review. See generally L. Orfield, Criminal Appeals in America 215–231 (1939).

[8] 1 J. Stephen, A History of the Criminal Law of England 308–310 (1883).

in "all criminal prosecutions." They are presented strictly as rights that are available in preparation for trial and at the trial itself. The Sixth Amendment does not include any right to appeal. As we have recognized, "[t]he right of appeal, as we presently know it in criminal cases, is purely a creature of statute." *Abney,* 431 U. S., at 656. It necessarily follows that the Amendment itself does not provide any basis for finding a right to self-representation on appeal.

The *Faretta* majority's nontextual interpretation of the Sixth Amendment also included an examination of British criminal jurisprudence and a reference to the opprobrious trial practices before the Star Chamber. 422 U. S., at 821–824. These inquiries into historical English practices, however, again do not provide a basis for extending *Faretta* to the appellate process, because there was no appeal from a criminal conviction in England until 1907. See *Griffin* v. *Illinois,* 351 U. S. 12, 21 (1956) (Frankfurter, J., concurring in judgment); 7 Edw. VII, ch. 23 (1907). Indeed, none of our many cases safeguarding the rights of an indigent appellant has placed any reliance on either the Sixth Amendment or on *Faretta.* See, *e. g., Douglas* v. *California,* 372 U. S. 353, 356–358 (1963); *Griffin,* 351 U. S., at 12.

Finally, the *Faretta* majority found that the right to self-representation at trial was grounded in part in a respect for individual autonomy. See 422 U. S., at 834. This consideration is, of course, also applicable to an appellant seeking to manage his own case. As we explained in *Faretta,* at the trial level "[t]o force a lawyer on a defendant can only lead him to believe that the law contrives against him." *Ibid.* On appellate review, there is surely a similar risk that the appellant will be skeptical of whether a lawyer, who is employed by the same government that is prosecuting him, will serve his cause with undivided loyalty. Equally true on appeal is the related observation that it is the appellant personally who will bear the consequences of the appeal. See *ibid.*

In light of our conclusion that the Sixth Amendment does not apply to appellate proceedings, any individual right to self-representation on appeal based on autonomy principles must be grounded in the Due Process Clause. Under the practices that prevail in the Nation today, however, we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding. We have no doubt that instances of disloyal representation are rare. In both trials and appeals there are, without question, cases in which counsel's performance is ineffective. Even in those cases, however, it is reasonable to assume that counsel's performance is more effective than what the unskilled appellant could have provided for himself.

No one, including Martinez and the *Faretta* majority, attempts to argue that as a rule *pro se* representation is wise, desirable, or efficient.[9] Although we found in *Faretta* that the right to defend oneself at trial is "fundamental" in nature, *id.*, at 817, it is clear that it is representation by counsel that is the standard, not the exception. See *Patterson* v. *Illinois*, 487 U. S. 285, 307 (1988) (noting the "strong presumption against" waiver of right to counsel). Our experience has taught us that "a pro se defense is usually a bad defense, particularly when compared to a defense provided by an experienced criminal defense attorney."[10]

As the *Faretta* opinion recognized, the right to self-representation is not absolute. The defendant must "'voluntarily and intelligently'" elect to conduct his own defense,

---

[9] Some critics argue that the right to proceed *pro se* at trial in certain cases is akin to allowing the defendant to waive his right to a fair trial. See, *e. g., United States* v. *Farhad*, 190 F. 3d 1097, 1106–1107 (CA9 1999) (Reinhardt, J., concurring specially), cert. pending, No. 99–7127.

[10] Decker, The Sixth Amendment Right to Shoot Oneself in the Foot: An Assessment of the Guarantee of Self-Representation Twenty Years after *Faretta*, 6 Seton Hall Const. L. J. 483, 598 (1996).

422 U. S., at 835 (quoting *Johnson* v. *Zerbst*, 304 U. S. 458, 464–465 (1938)), and most courts require him to do so in a timely manner.[11] He must first be "made aware of the dangers and disadvantages of self-representation." 422 U. S., at 835. A trial judge may also terminate self-representation or appoint "standby counsel"—even over the defendant's objection—if necessary. *Id.*, at 834, n. 46. We have further held that standby counsel may participate in the trial proceedings, even without the express consent of the defendant, as long as that participation does not "seriously undermin[e]" the "appearance before the jury" that the defendant is representing himself. *McKaskle* v. *Wiggins*, 465 U. S. 168, 187 (1984). Additionally, the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal "chores" for the defendant that counsel would normally carry out. *Id.*, at 183–184. Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.

In the appellate context, the balance between the two competing interests surely tips in favor of the State. The status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when a jury returns a guilty verdict. We have recognized this shifting focus and noted:

> "[T]here are significant differences between the trial and appellate stages of a criminal proceeding. The purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt. . . .
>
> "By contrast, it is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor

---

[11] See *id.*, at 544–550 (collecting cases).

but rather to overturn a finding of guilt made by a judge or a jury below." *Ross* v. *Moffitt,* 417 U. S. 600, 610 (1974).

In the words of the *Faretta* majority, appellate proceedings are simply not a case of "hal[ing] a person into its criminal courts." 422 U. S., at 807.

The requirement of representation by trained counsel implies no disrespect for the individual inasmuch as it tends to benefit the appellant as well as the court. Courts, of course, may still exercise their discretion to allow a lay person to proceed *pro se.* We already leave to the appellate courts' discretion, keeping "the best interests of both the prisoner and the government in mind," the decision whether to allow a *pro se* appellant to participate in, or even to be present at, oral argument. *Price* v. *Johnston,* 334 U. S. 266, 284 (1948). Considering the change in position from defendant to appellant, the autonomy interests that survive a felony conviction are less compelling than those motivating the decision in *Faretta.* Yet the overriding state interest in the fair and efficient administration of justice remains as strong as at the trial level. Thus, the States are clearly within their discretion to conclude that the government's interests outweigh an invasion of the appellant's interest in self-representation.

## III

For the foregoing reasons, we conclude that neither the holding nor the reasoning in *Faretta* requires California to recognize a constitutional right to self-representation on direct appeal from a criminal conviction. Our holding is, of course, narrow. It does not preclude the States from recognizing such a right under their own constitutions. Its impact on the law will be minimal, because a lay appellant's rights to participate in appellate proceedings have long been limited by the well-established conclusions that he has no right to be present during appellate proceedings, *Schwab* v. *Berggren,* 143 U. S. 442 (1892), or to present oral argument,

*Price*, 334 U. S., at 285–286. Meanwhile the rules governing appeals in California, and presumably those in other States as well, seem to protect the ability of indigent litigants to make *pro se* filings. See, *e. g., People* v. *Wende*, 25 Cal. 3d 436, 440, 600 P. 2d 1071, 1074 (1979); see also *Anders* v. *California*, 386 U. S. 738 (1967). In requiring Martinez, under these circumstances, to accept against his will a state-appointed attorney, the California courts have not deprived him of a constitutional right. Accordingly, the judgment of the California Supreme Court is affirmed.

*It is so ordered.*

JUSTICE KENNEDY, concurring.

To resolve this case it is unnecessary to cast doubt upon the rationale of *Faretta* v. *California*, 422 U. S. 806 (1975). *Faretta* can be accepted as quite sound, yet it does not follow that a convicted person has a similar right of self-representation on appeal. Different considerations apply in the appellate system, and the Court explains why this is so. With these observations, I join the opinion of the Court.

JUSTICE BREYER, concurring.

I agree with the Court and join its opinion. Because JUSTICE SCALIA writes separately to underscore the continuing constitutional validity of *Faretta* v. *California*, 422 U. S. 806 (1975), I note that judges closer to the firing line have sometimes expressed dismay about the practical consequences of that holding. See, *e. g., United States* v. *Farhad*, 190 F. 3d 1097, 1107 (CA9 1999) (concurring opinion) (right of self-representation "frequently, though not always, conflicts squarely and inherently with the right to a fair trial"). I have found no empirical research, however, that might help determine whether, in general, the right to represent oneself furthers, or inhibits, the Constitution's basic guarantee of fairness. And without some strong factual basis for believing that *Faretta's* holding has proved counterproductive in

practice, we are not in a position to reconsider the constitutional assumptions that underlie that case.

JUSTICE SCALIA, concurring in the judgment.

I do not share the apparent skepticism of today's opinion concerning the judgment of the Court (often curiously described as merely the judgment of "the majority") in *Faretta* v. *California,* 422 U. S. 806 (1975). I have no doubt that the Framers of our Constitution, who were suspicious enough of governmental power—including judicial power—that they insisted upon a citizen's right to be judged by an independent jury of private citizens, would not have found acceptable the compulsory assignment of counsel *by the government* to plead a criminal defendant's case. While I might have rested the decision upon the Due Process Clause rather than the Sixth Amendment, I believe it was correct.

That asserting the right of self-representation may often, or even usually, work to the defendant's disadvantage is no more remarkable—and no more a basis for withdrawing the right—than is the fact that proceeding without counsel in custodial interrogation, or confessing to the crime, usually works to the defendant's disadvantage. Our system of laws generally presumes that the criminal defendant, after being fully informed, knows his own best interests and does not need them dictated by the State. Any other approach is unworthy of a free people. As Justice Frankfurter eloquently put it for the Court in *Adams* v. *United States ex rel. McCann,* 317 U. S. 269 (1942), to require the acceptance of counsel "is to imprison a man in his privileges and call it the Constitution." *Id.,* at 280.

In any event, *Faretta* is relevant to the question before us only to the limited extent that we must decide whether its holding applies to self-representation on appeal. It seems to me that question is readily answered by the fact that there is no constitutional right to appeal. See *McKane* v. *Durston,* 153 U. S. 684, 687–688 (1894). Since a State could, as

far as the Federal Constitution is concerned, subject its trial-court determinations to no review whatever, it could *a fortiori* subject them to review which consists of a nonadversarial reexamination of convictions by a panel of government experts. Adversarial review with counsel appointed by the State is even less questionable than that.

For these reasons, I concur in the judgment of the Court.