### UNITED STATES of America, Plaintiff–Appellee,

v.

### Ruben PEREZ, Defendant–Appellant.

No. 00–3901.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 3, 2001.

Decided Nov. 6, 2001.

Before BAUER, COFFEY, DIANE P. WOOD, Circuit Judges.

ORDER

Ruben Perez, after jury trial, was convicted of being present in the United States, without the express consent of the Attorney General, after having been deported. 8 U.S.C. § 1326(a). On appeal Perez argues that he was denied his right to self-representation as recognized by *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). We affirm.

In 1991 Perez was convicted in federal court of possession with intent to distribute cocaine. After serving a 60-month prison term, Perez was deported to Mexico in April 1995. On two separate occasions thereafter he unlawfully reentered the United States: once in the summer of 1995 and again in October 1999. After Perez was arrested on a state drug charge during his latter visit to the United States, he was taken into federal custody on a criminal complaint charging him with a violation of 8 U.S.C. § 1326(a). (Perez was later charged by superseding indictment.) When Perez made his initial appearance, he was represented by appointed counsel from the Federal Defender's office. A few days later counsel was granted leave to withdraw; attorney John Meyer was appointed at that time.

At a pretrial status hearing on June 14, 2000, Meyer told the court that during a meeting with Perez the prior week Perez had "voiced a certain dissatisfaction with [his] advice and counsel on the case." Meyer pointed out in particular that Perez was dissatisfied with Meyer's calculation of Perez's likely prison term. Meyer said, "[W]hen I explained the applicable guide-

line sentence to Mr. Perez, he expressed total disbelief and dissatisfaction ...." In Meyer's view, Perez wanted the court to appoint new counsel. Perez, who was not fluent in the English language and had to be assisted by a translator, then told the court that Meyer had failed to arrange a meeting with the government, so that Perez could proffer information regarding other criminal activity he was aware of. The government explained that Meyer had indeed attempted to arrange the proffer and further told the court that it would be willing to meet with Perez in the next two weeks.

Concerned with Perez's language barrier, the trial judge asked Meyer if he could arrange for Luis Galvan, a Spanish-speaking attorney with the Federal Defender's office, to be present at the proffer. Meyer thought that unlikely, given that the Federal Defender's office had previously withdrawn from the case "because of the same problems I encountered." The district court granted a continuance so that the parties could arrange the proffer and told Meyer to "stay in the case now." The court next addressed Perez about Meyer's representation, stating, "I can't keep appointing attorneys for you. You have had two attorneys now. I am going to ask if they can arrange to have a Spanish-speaking lawyer also sit in for a proffer. I think if Mr. Galvan could be with him so that there are no language problems as well as an interpreter, I think it would be helpful."

The proffer took place on June 19, and Galvan did attend. Meyer reported at the next status hearing on June 29, however, that the proffer would not "result in any change as far as what [Perez] is looking at in the case." Meyer further explained that he had met with Perez after the proffer, and Perez told him that he wanted a different lawyer. When asked by the court if he had anything to say, Perez

again expressed dissatisfaction with Meyer's representation. He said:

> I don't need a public lawyer because the only thing a public lawyer is going to do for me is they come and talk to me about the time I am going to get, and they don't know anything about motions, filing motions or anything. They are just there to make the government's sentence that they are going to give you easier, and I would rather just go ahead on my own on this. Whatever I am going to get, I would rather the judge give me.

The district court responded:

> Well, Mr. Perez, I will certainly listen to whatever you want to tell me, and I will give you an opportunity obviously to speak at any point during these proceedings. But I have appointed two different lawyers for you now, both of whom are informed and skilled in criminal work. I don't want you to be without a lawyer. So I am going to keep Mr. Meyer in the case. You can turn to him whenever you want to for information, advice. If you want to say something to me at any point, I will permit you to do so.

The district court went on to set an initial trial date of July 10 and then again addressed the issue of Meyer's representation. The court told Perez: "Mr. Meyer will assist and represent you. When you want to speak, we will let you speak, we will let you tell the jury your story." Apparently dissatisfied with this response, Perez replied, "I don't want you to spend any more on me for attorneys," but the court said, "Well, don't worry about that." Perez persisted, "I think I can defend myself better," but the court disagreed. It said, "No. You have a problem; the language problem, Mr. Perez, it has to be translated. That's too heavy a burden for you. We will have Mr. Meyer here who is a very good lawyer, and we will try the case on the 10th." The district court then asked Meyer to explore whether a Spanish-speaking lawyer, such as Galvan, could appear either with him or in substitution at the trial. But for now, the court continued, "I want you to stay in the case and prepare for the 10th, but if Mr. Galvan could be brought in the case to help Mr. Perez, that would be even better."

On July 19 Perez filed a "Motion to Compel Present Counsel to Withdraw and/or for the Appointment of New Counsel." In that motion Perez explained that he had developed "irreconcilable differences" with Meyer, and that those differences were partly due to Meyer's failure to raise an argument concerning the effect of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), on its earlier decision in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Perez also stated in that motion that he had "no intentions of waiving his right to assistance of counsel." As relief, Perez requested that "present counsel be granted leave to withdraw and that new counsel be appointed to represent the defendant in this matter." The court denied that motion at another hearing on July 19.

A jury trial was held on July 26 and 27, at which only Meyer appeared as Perez's counsel. Perez took the stand and admitted the essential elements of the charged offense, and ultimately was convicted. Because Perez had previously been deported after being convicted of an aggravated felony, he was subject to a maximum imprisonment term of 20 years (rather than the usual 2 years), *see* § 1326(a), (b)(2), and was in fact sentenced to 77 months' imprisonment.

On appeal, through new counsel, Perez maintains that he was denied his Sixth Amendment right to self-representation as

recognized by the Supreme Court in *Faretta*. In particular, he argues that the district court abused its discretion in denying his "request" to proceed pro se without determining whether his decision to do so was voluntary and intelligent.

*Faretta* holds that a defendant has a Sixth Amendment right to conduct his own defense, so long as he voluntarily and intelligently elects to do so. 422 U.S. at 807, 95 S.Ct. 2525; *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 154, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000); *United States v. Hill*, 252 F.3d 919, 923 (7th Cir.2001). The right to self-representation does not attach, however, unless the defendant asserts it clearly and unequivocally. *See Faretta*, 422 U.S. at 835, 95 S.Ct. 2525; *Cain v. Peters*, 972 F.2d 748, 749–50 (7th Cir.1992). Once a clear and unequivocal request has been made, the district court should engage in a colloquy with the defendant to ensure that his decision is an informed one. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525; *Hill*, 252 F.3d at 924–25; *United States v. Berkowitz*, 927 F.2d 1376, 1383 (7th Cir.1991).

Perez assumes in his brief that he made a clear and unequivocal request to proceed pro se; we disagree. At the June 29 hearing, after Meyer told the district court that Perez wanted new counsel appointed, Perez merely expressed dissatisfaction with Meyer's performance and with the judicial system in general. Only after the district court effectively denied Perez's request for a third lawyer did Perez signal some less-than-straightforward interest in representing himself. Perez, however, never expressly made clear that he was interested in waiving his right to counsel. His comments, such as "I don't want you to spend any more on me for attorneys," and "I think I can defend myself better," appear to be nothing more than an impulsive reaction to the district court's refusal to remove Meyer from the case. *See, e.g.,*

*Reese v. Nix*, 942 F.2d 1276, 1280–81 (8th Cir.1991). Ultimately Perez's representation in his July 19, 2000, motion for appointment of new counsel that he had no intention of waiving his right to counsel convinces us that Perez did not unambiguously request to proceed pro se and in effect abandoned whatever interest he had in proceeding pro se. *See United States v. Johnson*, 223 F.3d 665, 668 (7th Cir.2000) (invocation of right to counsel constitutes "de facto waiver" of right to self-representation). Absent a clear and unequivocal request to proceed pro se, Perez's *Faretta* claim necessarily fails.

AFFIRMED.