[J-30-2018] [MO: Mundy, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 736 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | 12/31/2016 in the Court of Common |
| | : | Pleas, Lehigh County, Criminal |
| v. | : | Division, dismissing PCRA relief at |
| | : | No. CP-39-CR-0003716-1996. |
| | : | |
| JAMES T. WILLIAMS, | : | SUBMITTED:  March 19, 2018 |
| | : | |
| Appellant | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                                              **DECIDED:  November 21, 2018**

I join the learned Majority's opinion, albeit subject to a caveat.  I agree that James

Williams is not entitled to relief upon his claim that stand-by direct appellate counsel,

Daniel Silverman, Esquire, interfered with Williams' election to represent himself on direct

appeal.[1]  But I reach this conclusion solely because the issue has been previously litigated

---

[1]      The Majority notes that this Court, which had recognized a federal constitutional right to self-representation on appeal in *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998), since has acknowledged that the right was called into question following the United States Supreme Court's opinion in *Martinez v. Court of Appeal of California*, 528 U.S. 152 (2000).  *See* Maj. Op. at 11 n.7.  Our analysis in *Grazier* relied upon our interpretation of the Sixth Amendment to the United States Constitution.  In *Martinez*, however, the Supreme Court held that the Sixth Amendment confers no such right, but that states were free to find such a right in their own constitutions.  In *Commonwealth v. Staton*, 12 A.3d 277 (Pa. 2010), this Court acknowledged that it had yet to revisit, in the wake of *Martinez*, whether the Pennsylvania Constitution independently confers such a right; rather, this Court assumed the existence of such a right for purposes of decision. Whether such a right exists under Pennsylvania law, and whence it derives, remains undecided.  *But see Commonwealth v. Figueroa*, 29 A.3d 1177, 1182 (Pa. Super. 2011) (finding that *Grazier* remains controlling law unless and until this Court overturns it).  Like the Majority and the *Staton* Court, I assume for present purposes that such a right exists.

and is thus not cognizable under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-46 ("PCRA").

To obtain collateral relief under the PCRA, a petitioner must demonstrate that "the allegation of error has not been previously litigated." 42 Pa.C.S. § 9543(a)(3). For purposes of the PCRA, "an issue has been previously litigated if . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2). Williams previously argued to this Court that Silverman had overstepped his authority and usurped Williams' *pro se* election during direct appeal. Specifically, Williams made this claim in his June 9, 2003 "Motion to File Emergency Amended Pro Se Appeal," which we denied *per curiam* on December 23, 2003, and then made it again in his June 27, 2005 Application for Leave to File Post-Submission Communication (*i.e.*, in the nature of a *pro se* brief), which we denied *per curiam* on November 16, 2005. Accordingly, we may not grant relief now. *Accord* Maj. Op. at 12-13.

My reservations arise from the more expansive aspects of the Majority's reasoning. Although the previous litigation bar is sufficient to dispose of the stand-by counsel issue that Williams presents, the Majority discusses at length and reaffirms the trial court's rejection of Williams' putative claim that Silverman, *qua* stand-by counsel, rendered constitutionally ineffective representation. *Id.* at 9-11. Although the Majority is correct that no relief will lie for ineffective assistance of stand-by counsel, *see id.* at 10 (citing *Commonwealth v. Spotz*, 47 A.3d 63, 83 (Pa. 2012)), it follows *a fortiori* from our prior rejections of Williams' requests to file a *pro se* brief that Williams had acquiesced entirely to Silverman's representation for purposes of Williams' direct appeal. Thus, any analysis

premised upon Silverman's putative stand-by status is irreconcilable with our prior rulings, and therefore is gratuitous at best and potentially misleading in its doctrinal implications.[2]

The problem arises because the Majority seeks a middle ground in which it identifies Silverman as stand-by counsel, and thus immune to an ineffectiveness claim, while implicitly finding that Silverman's "collaborative" stand-by role was so substantial that it supplanted Williams' undisputedly invoked and repeatedly confirmed desire to direct his own appellate strategy. The Majority writes first that "[i]t is not contested that [Williams] in this case was acting *pro se* from the commencement of his direct appeal," and later that "the record of [Williams'] direct appeal evidences his status as *pro se* was recognized." *Id.* at 8 n.6, 11 n.7. However, the Majority then concludes as follows:

> The record of [Williams'] direct appeal with this Court demonstrates that [Williams] deferred to stand[-]by counsel to file numerous remand requests and motions for extension to file a brief. Thus, the record supports the PCRA court's conclusion that [Williams] approved of stand-by counsel's collaborative assistance in drafting and submitting filings with this Court during his direct appeal. The fact that [Williams] objected to the failure to include various issues in the appellate brief subsequently submitted[] does

---

[2]    Pennsylvania courts long have held that there is no constitutional right to hybrid representation—*i.e.*, the presentation of filings by both counsel and by the defendant *pro se*—at any stage of a proceeding, including on appeal. *Commonwealth v. Ellis*, 626 A.2d 1137, 1139 (Pa. 1993). Our Court's direction regarding how to proceed when such dual filings occur has evolved over the years. *See generally Commonwealth v. Jette*, 23 A.3d 1032, 1036-1044 (Pa. 2011) (reviewing the evolution of, and ultimately rejecting, what we styled the *Battle* procedure, *see Commonwealth v. Battle*, 879 A.2d 266 (Pa. Super. 2005), because its *de facto* requirement that counsel assess the merits of any issues the defendant submitted *pro se* was in conflict with the various policy interests served by precluding hybrid representation). Presently, appellate courts refuse to docket a *pro se* filing submitted by a counseled defendant, and then forward that filing to counsel for review. Counsel then *may*, but is not obligated to, file a motion or supplemental brief addressing or embodying the concerns raised in defendant's *pro se* filing. *See id.* at 1044. However, when, as in this case, the defendant credibly contests counsel's representation as such, cases like *Jette* arguably are distinguishable, because in that case and others, there was no question that the defendant was represented by counsel at the time of his *pro se* filing.

not mean that stand[-]by counsel usurped or unduly interfered with [Williams'] right of self-representation.

*Id.* at 12. The Majority thus endorses the conclusion that, insofar as Williams challenges Silverman's abandonment of claims on appeal, Williams acquiesced to Silverman's status as counsel of record,[3] but, to the extent that Williams asserts the ineffectiveness of that representation, he preserved his *pro se* status—vitiating any opportunity to advance that challenge. This "heads I win, tails you lose" approach is both internally inconsistent and inequitable.

Silverman's brief undisputedly deviated from the wishes that Williams expressed, was unapproved by Williams, was submitted with an "s/" signature on Williams' behalf that Williams did not authorize,[4] and, in its omissions, effectively waived numerous issues that Williams wished to litigate. In short, despite the fact that Williams never expressly signaled his intent to relinquish his *pro se* status, at some point he lost access to every privilege that defines self-representation—as well, it seems, as the right associated with full representation by counsel that meets a constitutional minimum standard of effectiveness, because, despite Silverman's overweening actions, his engagement retained its "stand-by" status.

Nonetheless, Williams twice presented this issue to this Court during his direct appeal, and twice this Court denied relief.[5] In denying him the defining prerogative of *pro*

---

[3]     Only appellate counsel of record may omit issues that the client seeks to pursue. *See generally Commonwealth v. Jette*, 23 A.3d 1032, 1043 (Pa. 2011) ("It is well settled that appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of issues he believes pose a greater likelihood of success.").

[4]     This circumstance suggests that counsel believed he continued to act in a stand-by capacity. Williams' signature would not otherwise be necessary.

[5]     This Court's denial of Williams' *pro se* prayers for relief by order is at odds with the *Ellis* procedure as reaffirmed in *Jette, see supra* n.2, pursuant to which one would expect the Court to forward the motions to Silverman without docketing or deciding them. The

*se* status to direct the presentation of his own defense, our orders necessarily accepted the brief that Silverman submitted on Williams' behalf, which reflected tactical decisions to omit issues that Williams sought to present. Only counsel serving in a fully representative capacity has the privilege to make those sorts of decisions on a client's behalf. Thus, our tacit approval of that circumstance necessarily presumed Williams' acquiescence to Silverman's full representation.

Because the stand-by counsel usurpation issue is subject to the previous litigation bar, Williams may obtain collateral relief only by establishing Silverman's ineffective representation *as direct appellate counsel*. In order to establish ineffectiveness, a petitioner must plead and prove, by a preponderance of the evidence, that "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011). A petitioner's failure to establish any one prong is fatal to his claim. *Id.* at 1128. Here, while Williams states an ineffectiveness claim in the alternative, he does not base it upon Silverman's alleged imposition upon Williams' *pro se* status or upon Silverman's failure to act to address Williams' attempt to file a *pro se* brief by, for example, filing a supplemental brief. With regard to the usurpation of his *pro se* status, Williams frames his claim as sounding directly in the violation of his right to self-representation and as a violation of due process, rather than doing so clearly, if in the alternative, as a claim regarding Silverman's performance as counsel of record. In any event, Williams does not

---

record is insufficient to tease out the reason for this incongruity. However, it remains the case that, because Williams' attempts to assert his *pro se* status before this Court were denied and are now unreviewable, a) any such effort in the instant collateral context is not cognizable under the PCRA because it has been previously litigated, and b) that finality must be read as embodying the premise that Silverman was identified by this Court as counsel of record for purposes of Williams' direct appeal.

even plead, let alone prove, any element of the ineffective assistance of counsel standard on any theory. Thus, any such intended claim does not merit further consideration.

In my view, once invoked, the right to represent oneself is too important to be denied by implication. *See Faretta v. California*, 422 U.S. 806, 819 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."). That is why, while it acknowledged that a defendant "may allocate to the counsel the power to make binding decisions of trial strategy," the *Faretta* Court held that the allocation of such power "can only be justified . . . by the defendant's consent, at the outset, to accept counsel as his representative." *Id.* at 820-21.[6] Nothing in *Faretta* supports the proposition that a *pro se* litigant can so thoroughly acquiesce to counsel's "assistance" as to lose control of his defense while nominally retaining *pro se* status, subordinating his will to "stand-by" counsel's fiat, while simultaneously sacrificing his time-honored right to constitutionally adequate representation.

To be clear, I do not take for granted that this Court so concluded. Our orders were silent as to the Court's rationale for denying Williams' 2003 and 2005 motions, and it would be imprudent to speculate now as to the Court's reasoning then. I wish only to suggest that, when a court observes behavior consistent with both a stand-by and a fully representative relationship, it should take steps to ensure that the full nature of the attorney-defendant relationship is mutually understood, as it must when determining

---

[6] Notably, in its most recent term, the High Court, relying in part on *Faretta*, held that a defendant does not surrender all control to trial counsel. Thus, in that case, the Court held that a capital defendant had the right to direct counsel not to admit the defendant's guilt during the penalty phase of his trial, despite counsel's reasonable belief that admitting guilt was the most effective tactic to save the defendant from being sentenced to death. The Court further held that trial counsel's refusal to adhere to the defendant's direction in this regard constituted structural error necessitating a new trial. *See McCoy v. Louisiana*, ___ U.S. ___, 138 S.Ct. 1500 (U.S. 2018).

whether a defendant's stated desire to represent himself is knowing, voluntary, and intelligent. *See* Pa.R.Crim.P. 121 (describing the on-the-record colloquy required to establish these elements). Here, some measure of confusion may have prevailed during direct appeal. Nonetheless, the time to resolve any such confusion has passed. Because the core question pertaining to Williams' consent to Silverman's representation has previously been litigated, it is not cognizable under the PCRA. No further discussion of the underlying merits is necessary or prudent.

Justice Todd joins this concurring opinion.