[Cite as *State v. Thomas*, 2024-Ohio-3387.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| TIMOTHY A. THOMAS, | : | Case No. 2023 CA 0032 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Richland County
Court of Common Pleas, Case No.
2021 CR 00843

JUDGMENT:       Affirmed in part; Reversed in part
and Remanded

DATE OF JUDGMENT:       August 30, 2024

APPEARANCES:

For Plaintiff-Appellee

JODIE SCHUMACHER
Prosecuting Attorney
Richland County, Ohio

By: MEGAN HOBART
Assistant Prosecuting Attorney
38 South Park Street, Second Floor
Mansfield, Ohio 44902

For Defendant-Appellant

WILLIAM T. CRAMER
470 Olde Worthington Road
Suite 200
Westerville, Ohio 43082

*Baldwin, J.*

**{¶1}** The appellant, Timothy Thomas, appeals his conviction and sentence on charges of murder, felonious assault, tampering with evidence, and domestic violence. The appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

## STATEMENT OF THE FACTS AND THE CASE

**{¶2}** On November 17, 2021, the appellant was indicted on one count of Aggravated Murder in violation of R.C. §2903.01(A), Murder in violation of R.C. §2903.02(A), Felonious Assault with a Deadly Weapon in violation of R.C. §2903.11(A)(2), Felonious Assault causing Serious Physical Harm in violation of R.C. 2903.11(A)(1), Tampering with Evidence in violation of R.C. §2921.12 (A)(1), and Domestic Violence in violation of R.C. §2919.25(A).

**{¶3}** On January 12, 2022, the appellant filed a motion to terminate his appointed counsel. The appellant withdrew that motion on January 20, 2022, at a hearing for that motion.

**{¶4}** On March 16, 2022, the appellant filed another motion to terminate appointed counsel.

**{¶5}** On March 18, 2022, the appellant asked to proceed pro se. The trial court required the appellant to make a formal motion. However, the trial court allowed the appellant's appointed counsel to withdraw, and the trial court appointed new counsel.

**{¶6}** On March 23, 2022, the appellant filed a formal motion to proceed pro se. The trial court granted the appellant's motion to proceed pro se and appointed Attorney Hitchman to serve as standby counsel.

**{¶7}** On August 19, 2022, the appellant moved for appointed counsel. The trial court appointed Attorney Hitchman.

**{¶8}** On April 19, 2023, the matter proceeded to a jury trial. Prior to voir dire, the trial court dismissed the charge of Aggravated Murder.

**{¶9}** At trial, A.L., the sister of the victim, testified that the appellant and victim lived together. On Saturday, September 25, 2021, A.L. tried calling the victim several times but got no response. A.L. eventually went to the appellant's home to check on her sister. She knocked and received no response. She eventually called the police for a well-check.

**{¶10}** Next, Special Agent Staley testified he works for the Ohio Bureau of Criminal Investigation. He photographed the crime scene after obtaining a search warrant. Those photographs were entered into evidence.

**{¶11}** Dr. Lehman testified that he is a pathologist. His primary responsibilities are performing autopsies and writing autopsy reports. He testified the victim suffered blunt force injuries, had bruises, had cuts on her face and scalp, and received seven stab wounds, including one that went through her scalp and into her skull. The victim's toxicology report came back positive for cocaine and a small amount of alcohol. Dr. Lehman concluded that the cause of death was from bleeding from multiple stab wounds.

**{¶12}** During Dr. Lehman's testimony, the appellant told the trial court he wanted to proceed pro se. The trial court denied the request as the appellant had already requested to proceed pro se before trial and asked for counsel to be appointed, and now the jury has already been sworn. When the jury was brought back into the courtroom, the appellant addressed the jury against the warning of the trial court attempting to shout over

the judge that he wanted to proceed pro se and that "they" were lying. The appellant was escorted out of the courtroom. After the jury was taken out of the court room, the appellant was brought back in and remained confrontational with the trial court about proceeding pro se. He seemed to be unhappy that his attorney had not asked Dr. Lehman any questions, even though cross-examination had not yet begun. The appellant eventually indicated he would conduct himself properly for the remainder of the trial.

{¶13} After cross-examination, the appellant addressed the trial court without permission, saying his attorney sold him out and that his attorney refused to ask the question the appellant gave him. He said the evidence was fake and he could not hold a knife. The appellant's outbursts were loud, violent, and disruptive to the proceedings. The trial court again denied the appellant going pro se as he already had two attorneys, attempted to go pro se, and had already sworn in the jury.

{¶14} The next witness, Michelle Matozel, testified that she works a DNA analyst for the Ohio Bureau of Criminal Investigation. Blood from the front of recovered pants at the scene was from two contributors, the appellant, and the victim; blood recovered from the kitchen floor had a DNA profile consistent with the appellant; Blood from the blade of the knife had a DNA profile consistent with the victim; Blood from the handle of the knife had a DNA profile consistent with the appellant.

{¶15} The district manager for the victim's employer testified that the victim was reliable and always made her pickups. The appellant would help the victim with the pickups. The district manager noted that the victim made her scheduled pickup on Saturday, but not Sunday. The manager called the victim early Sunday afternoon and did not receive an answer. The appellant answered the victim's phone at 2:20 p.m. on Sunday

when the manager tried again. She could not understand what the appellant was saying, and Charles Roberts then took the phone. He said the appellant was under the car fixing it. The manager asked to speak with the victim, and Roberts hung up.

{¶16} James Hicks testified that he met the appellant at a half-way house. After getting out, the appellant and Hicks would help each other with work. On Sunday, September 26, 2021, Hicks was at Roberts's house when the appellant drove over in the victim's car. He believed Thomas was under the influence of drugs, and his hand was bleeding. By the time Roberts reached the porch, the appellant had collapsed. Hicks helped the appellant into the house. When asked where the victim was, the appellant would not respond.

{¶17} Hicks attempted to take the victim's car back, but no one answered the door when he knocked. The appellant attempted to disrobe and suffered convulsions and seizures. Later in the day, the appellant's niece called the appellant and Hicks picked up. He told her what was going on. She instructed Hicks to call 911 and get the appellant to a hospital. Hicks eventually called 911 to take the appellant to the hospital.

{¶18} Firefighters arrived at Roberts's house, and Thomas was alert, agitated, and aggressive. He attempted to get away from them by crawling under a table. Roberts told firefighters that the appellant said his wife was dead. Hicks denied using drugs the day the appellant came over but went to get treatment for drug use. He also admitted he had a mental breakdown at the time.

{¶19} The appellant testified that the victim told him she encountered Hicks, and he made her uncomfortable. So, he called Hicks on Saturday to discuss this and try to get paid for a past job he did for him. He then said that he and the victim did fentanyl

together. No fentanyl was found in the victim's system. On Sunday, he said he left early and started feeling the effects of the fentanyl. He blacked out and woke up in the hospital. He said his wife was alive when he left. He said he had a thirty-five-year-old injury on his right hand, which would prevent him from holding a knife with his right hand.

{¶20} The jury returned a verdict of guilty on all remaining counts.

{¶21} On May 16, 2023, the trial court merged Felonious Assault with a Deadly Weapon, Felonious Assault causing Serious Physical Harm, and Domestic Violence with the count of Murder. The trial court imposed fifteen years to life for Murder and thirty-six months in prison for Tampering with Evidence. The trial court also imposed a consecutive term prison term of 1,193 days for the remaining post-release control time, as the appellant was on post-release control at the time of the incident. Finally, the trial court imposed a term of two to five years of post-release control for the present case.

{¶22} The appellant filed a timely notice of appeal and raised the following four Assignments of Error:

{¶23} "I. THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL BY REFUSING TO CONSIDER HIS REQUEST TO PROCEED PRO SE."

{¶24} "II. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

{¶25} "III. THE TRIAL COURT IMPOSED THE WRONG PERIOD OF POST-RELEASE CONTROL UNDER R.C. 2967.28."

{¶26} "IV. THE TRIAL COURT ERRED IN CALCULATING THE REMAINING POST-RELEASE CONTROL TIME THAT IT IMPOSED AS A JUDICIAL SANCTION FOR

COMMITTING A FELONY WHILE ON POST-RELEASE CONTROL UNDER R.C. 2929.141."

## I.

**{¶27}** In the appellant's first assignment of error, the appellant argues the trial court erred in denying the appellant's request to proceed pro se during trial. We disagree.

### STANDARD OF REVIEW

**{¶28}** "We review for an abuse of discretion a trial court's denial of a request to proceed pro se asserted after voir dire was complete." *State v. Kramer*, 2016-Ohio-2984 (3d Dist.), ¶8. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

### ANALYSIS

**{¶29}** In *State v. Gibson*, 45 Ohio St.2d 366 (1976), the Ohio Supreme Court held the Sixth Amendment, as made applicable to the States by the Fourteenth Amendment, guarantees a defendant in a state criminal trial an independent constitutional right of self-representation permitting that defendant to proceed to defend himself without counsel when a defendant voluntarily, and knowingly, and intelligently elects to do so. *Id*. at syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, "*Faretta* itself and later cases have made clear that the right of self-representation is not absolute. See *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 163, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) (no right of self-representation on direct appeal in a criminal case); *McKaskle v. Wiggins*, 465 U.S. 168, 178-179, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (appointment of standby counsel over

self-represented defendant's objection is permissible); *Faretta*, 422 U.S., at 835, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (no right 'to abuse the dignity of the courtroom')." *Indiana v. Edwards* (2008), 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345.

**{¶30}** "The assertion of the right to self-representation must be clear and unequivocal." *State v. Neyland*, 2014-Ohio-1914, ¶72. "[G]iven the disfavored status of the right to self-representation compared to the right to counsel, a defendant who has made an unequivocal assertion of the right to self-representation may later waive it by accepting the assistance of counsel." *State v. Steele*, 2003-Ohio-7103 (1st Dist.), ¶13. "The defendant must also assert the right in a timely fashion." *Steele* at ¶14. "A trial court may deny a defendant's request for self-representation if it is untimely made." *Neyland* at ¶76. Also "[a] request for self-representation may be denied when circumstances indicate that the request is made for purposes of delay or manipulation of the trial process." *Neyland* at ¶72.

**{¶31}** In this case, the appellant invoked his right to self-representation for the first time on March 23, 2022. Almost five months later, the appellate waived his right to self-representation by requesting appointed counsel. After the trial had started, the appellant became agitated during the questioning of the third witness, apparently because his trial counsel would not interrupt the State's direct examination to ask questions. After direct examination, the judge removed the jury from the courtroom to address the appellant's request to proceed pro se. The trial court found the appellant's request to be untimely; the appellant continued his request even after the jury was brought back into the courtroom, becoming belligerent. The appellant's continual outbursts caused the trial court to remove him from the courtroom, and he had to view the trial via closed-circuit

television. Therefore, we find the trial court did not abuse its discretion in denying the appellant's request to proceed pro se as the request was not timely made, had already been waived after a previous invocation, and the appellant showed he intended to disrupt the proceedings by interrupting the State's case during its presentation of evidence.

{¶32} Accordingly, the appellant's first Assignment of Error is overruled.

## II.

{¶33} In the appellant's second Assignment of Error, the appellant argues he was convicted against the manifest weight of the evidence. We disagree.

## STANDARD OF REVIEW

{¶34} Manifest weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 1997-Ohio-52). The Supreme Court of Ohio stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.

*Id.* The Court stated further:

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the fact finder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at

2218, 72 L.Ed.2d at 661. See also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

Further, the Court in *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984), quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978), stated:

> [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the findings of facts.
>
> * *
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.

*Id.* at 80, fn. 3.

**ANALYSIS**

**{¶35}** The appellant argues that his conviction is against the manifest weight of the evidence. We disagree.

**{¶36}** R.C. §2903.02(A) states, "[n]o person shall purposely cause the death of another or the unlawful termination of another's pregnancy."

**{¶37}** R.C. §2903.11(A) states, in pertinent part:

(A)     No person shall knowingly do either of the following:

(1)     Cause serious physical harm to another or to another's unborn;

(2)     Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶38}** R.C. §2921.12 (A) states, in pertinent part:

(A)     No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1)     Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

**{¶39}** R.C. §2919.25(A) states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member.

**{¶40}** At trial, the State showed that both the appellant's and victim's blood were on the murder weapon, on clothing, and throughout the home. There was no indication that anyone other than the appellant entered his home where the murder was committed. The victim's sister testified that the victim resided with the appellant.

**{¶41}** The appellant makes an unsubstantiated claim that witnesses Hicks and Roberts set him up for the murder; however, he presents no evidence to support this conclusion. He says he left early Sunday morning, but his cell phone location shows that he did not leave early in the day. Then he claims to have blacked out and not remember being at Roberts' residence.

**{¶42}** We have thoroughly reviewed the entire record, weighed the evidence and all reasonable inferences, considered the credibility of witnesses, and have determined that in resolving conflicts in the evidence the jury did not lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The case does not present an "exceptional case in which the evidence weighs heavily against the conviction." Moreover, even if the evidence, in this case, is susceptible to more than one construction, we are bound to give it an interpretation consistent with the jury's decision and most favorable to sustaining the jury's verdict and judgment. Accordingly, we find the appellant's conviction is not against the manifest weight of the evidence.

**{¶43}** The appellant's second Assignment of Error is overruled.

### III.

**{¶44}** In the appellant's third Assignment of Error, the appellant argues that the trial court imposed the wrong period of post-release control under R.C. §2967.28. We agree.

**{¶45}** The trial court imposed a term of post-release control for his murder conviction improperly. Post-release control does not apply to murder convictions as murder is an unclassified felony. See *State v. Williams*, 2020-Ohio-77 (5th Dist.), ¶16. The

State concedes that the trial court imposed the wrong period of post-release control, and the matter should be remanded to the trial court to correct the erroneous post-release control portion of the appellant's sentence.

**{¶46}** The appellant's third Assignment of Error is well-taken.

## IV.

**{¶47}** In the appellant's fourth Assignment of Error, the appellant argues that the trial court erred in calculating the remaining post-release control time that it imposed as a judicial sanction for committing a felony while on post-release control. We agree.

## STANDARD OF REVIEW

**{¶48}** R.C. §2929.141(A)(1) provides for the termination of post-release control upon commission of a new felony as follows:

(A)     Upon the conviction of or plea of guilty to a felony by a person on post-release control at the time of the commission of the felony, the court may terminate the term of post-release control, and the court may do either of the following regardless of whether the sentencing court or another court of this state imposed the original prison term for which the person is on post-release control:

(1)     In addition to any prison term for the new felony, impose a prison term for the post-release control violation. The maximum prison term for the violation shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under post-release control for the earlier felony. In all cases, any prison term imposed for the violation shall be reduced by any prison term that is

administratively imposed by the parole board as a post-release control sanction. A prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony. The imposition of a prison term for the post-release control violation shall terminate the period of post-release control for the earlier felony.

### ANALYSIS

{¶49} In *State v. Wells*, 2015-Ohio-39 (5th Dist.), this Court addressed the same issue raised in the case sub judice. We held that the post-release control for the earlier felony did not terminate until the trial court imposed a prison term for the post-release control violation. The trial court, therefore, should have credited the appellant for the entire amount of time he spent on post-release control for the earlier felony, rather than limiting his credit to the amount of time he spent on post-release control before committing the new felony.

{¶50} In the case sub judice, the record does not show that the appellant's post-release control was revoked prior to sentencing on the new felony. The trial court indicated the appellant was not being monitored on the prior felony after being arrested on the current matter; however, there is no administrative termination of the appellant's post-release control. Therefore, we find the appellant's post-release control did not terminate until the trial court sentenced the appellant on the current matter.

{¶51} Accordingly, we sustain the appellant's fourth Assignment of Error.

**CONCLUSION**

{¶52}  For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed in part, reversed in part. This matter is remanded for further proceedings consistent with this opinion.

By: Baldwin, J.

Delaney, P.J. and

Hoffman, J. concur.